# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PANHANDLE EASTERN PIPE LINE COMPANY, LP, a Delaware limited partnership, | ) ) ) ) | |
| Plaintiff, | ) | Case No. CIV-20-751-D |
| vs. | ) ) ) | |
| ANITA TARRALBO, ET AL., | ) ) | |
| Defendants. | ) | |

**DEFENDANTS ANITA TARRALBO'S, DONNA HOEHNER'S AND TODD WARD'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND/OR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

Defendants Anita Tarralbo, Donna Hoehner and Todd Ward (hereinafter collectively referred to as the "Landowners"), respectfully move this Court for an Order dismissing the claim alleged against them[1] in Plaintiff Panhandle Eastern Pipe Line

---

[1] Landowners are cognizant of Fed.R.Civ.P. 71.1(e)(2) and (3), which in federal condemnation actions, require the filing of an answer in all cases within 21 days of service and effectively supplant standard motion and counterclaim practice under Fed.R.Civ.P. 12 and 13. However, Rule 71.1(e)(3) prohibits only motions that present "additional" objections and defenses beyond those listed in the Answer. The instant motion does not present additional objections and defenses beyond those listed in Landowners' Answer. *See e.g., Vill. of Wheeling v. Fragassi, 2010 WL 3087462, at \*3 (N.D. Ill. Aug. 2, 2010)*("The court first notes that Rule 71.1(e)(3) bars motions 'asserting an *additional* objection or defense.' In the present case, the USPS' motion only raises defenses that were contained in its answer"). Moreover, subject matter jurisdiction is an issue that may be raised at any time. *See also Sabal Trail Transmission, LLC v. 13.386 Acres of Land,* No. 5:16-CV-147-OC-41PRL, 2016 WL 2758913 at \*1 n.1 (M.D. Fla. May 12, 2016)(" The Court is aware of Federal Rule of Civil Procedure 71.1(e)(3)'s prohibition on objections raised outside of an answer. But because Defendants also raised this objection in their answer and the challenge is to the Court's subject matter jurisdiction, the Court did not strike the motion as improper").

Company, LP's ("Plaintiff") Complaint. [Dkt. 1].   For the reasons set forth herein, the

Court lacks subject matter jurisdiction over this pipeline condemnation action and/or the

Complaint fails to state a claim upon which relief may be granted.

## BRIEF IN SUPPORT

## INTRODUCTION

This is a pipeline condemnation action filed by Plaintiff, a private entity, and against

Landowners[2] under the guise of Section 717f(h) of the Natural Gas Act (the "NGA"), 15

U.S.C. § 717f(h), which federal statute also supplies the basis upon which Plaintiff invokes

the Court's subject matter jurisdiction in accordance with 28 U.S.C.§ 1331.   However,

Section 717f(h) of the NGA, pursuant to which Congress delegated the power of eminent

domain to pipeline companies holding certificates of public convenience and necessity

issued by the Federal Energy Regulatory Commission ("FERC"), does not apply under the

unique circumstances of this case.   Therefore, the Court lacks subject matter jurisdiction

over this action and/or the Complaint fails to state a claim upon which relief may be

granted.   Plaintiff must attempt to obtain the relief it seeks in the Oklahoma state courts.

As the United States Supreme Court has stated: "the dichotomy between personal

liberties and property rights is a false one.   Property does not have rights.   People have

rights[, such as t]he right to enjoy property without unlawful deprivation . . . That rights in

property are basic civil rights has long been recognized." *Lynch v. Household Fin. Corp*.,

---

[2] There are numerous other defendants besides Landowners, each of whom Plaintiff alleges holds or purports to hold an *easement* across the affected tract.   However, as noted in Paragraphs 8 through 21 of the Complaint, Plaintiff does not desire to acquire an interest in their easements but has named them only to accord with Fed.R.Civ.P. 71.1(c)(3).

405 U.S. 538, 552 (1972).  *See also Zinerman v. Burch*, 494 U.S. 113, 132 (1990).  In fact, as Arthur Lee, a Virginia delegate to the Continental Congress put it, "[t]he right of property . . . is the guardian of every other right, and to deprive a people of this is to deprive them of liberty."  James W. Ely, Jr., The Guardian of Every Other Right:  A Constitutional History of Property Rights 26 (2d ed. 1998).  These bedrock principles are of particular importance here.

In contrast to the usual federal pipeline condemnation action, this case does not involve countless landowners who own a multitude of tracts within the judicial district and across whose properties a proposed pipeline's course will follow.  Rather, this case is unique for four reasons.  First, as opposed to numerous tracts of land, it involves only a single, square, twenty (20) acre tract in Kingfisher County, Oklahoma.  Second, rather than dozens if not hundreds of affected landowners, there are only three, all of whom are family members, and each of whom owns an undivided one-third interest in the affected tract – the last remaining parcel of real estate that has, according to family lore, been in the family since the land run of 1889.  Third, the case does not involve a proposed pipeline at all but rather a compressor station.  Fourth, and most important for the Court's analysis, it does not involve a *proposed* compressor station.  Rather, Plaintiff, after having leased Landowners' tract for more than 40 years, and after having constructed its compression station many years ago, has now simply decided that it would be in its financial interest to own the property in fee simple, and so has filed the instant action.  For the reasons set forth

below, Congress' delegation of the power of eminent domain to a private entity is to be

strictly construed and Plaintiff's proposal falls outside the scope of Section 717f(h).[3]

## ARGUMENT AND AUTHORITIES

1. **Section 717f(h) Cannot Be Interpreted to Confer a Perpetual Right of Eminent Domain on Pipeline Companies Long <u>After</u> the Construction of the Facilities Authorized by the Federal Energy Regulatory Commission**

15 U.S.C. § 717f(h), which, since 1947, has conferred upon pipeline companies a

right of eminent domain for pipeline construction, Public Law 80-245, 61 Stat. 459 (July

25, 1947) (amending 7 U.S.C. §717f), states:

**(h) RIGHT OF EMINENT DOMAIN FOR _CONSTRUCTION_ OF PIPELINES, ETC.**

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to **construct**, <u>operate</u>, **and** <u>maintain</u> a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the **location** of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the

---

[3] The alleged statutory basis for subject matter jurisdiction is federal question jurisdiction under 28 U.S.C. § 1331. _See_ Paragraph 24 of Complaint. [Dkt. 1]. However, if Plaintiff were to attempt to rely upon _diversity_ jurisdiction, it has failed to allege the citizenship of not only itself, a limited partnership, which requires an identification of the citizenship of each partner, but also the citizenship of many of the corporate defendants.

owner of the property to be condemned exceeds $3,000. [emphasis added].

In Paragraph 30 of the Complaint, Plaintiff alleges that "*Since 1980*, Panhandle has owned, operated and maintained compressor station facilities (the 'Cashion Compressor Station') on the Property."  (Complaint at ¶ 30)[Dkt. 1](emphasis added).  It is currently the year 2020.  Only now, some forty years <u>after</u> the installation of the compressor station does Plaintiff seek to exercise the power of eminent domain over the underlying real estate.

The novel question before the Court is whether Section 717f(h) of the Natural Gas Act is susceptible to a strained interpretation that would allow a pipeline company, which is not a sovereign entity and possesses those powers and <u>only</u> those powers expressly delegated to it by Congress, to exercise the right of eminent domain over real property some 40 years after constructing the natural gas facilities at issue.

There is a distinct temporal aspect to Congress' delegation of the right of eminent domain in Section 717f(h).  The legislative history of the subsection reflects an emphasis on the need for federal law to ensure the *construction* of interstate pipelines in the face of state interference.  S. Rep. No. 80-429 at 3-4 (1947)("The Commission, through its certificate power, is authorized to grant certificates of convenience and necessity for the construction of interstate natural-gas pipelines from points of supply to certain defined and limited markets.  If a State may require such interstate natural-gas pipelines to serve markets within that State as a condition to exercising the right of eminent domain, then it is obvious that the orders of the Federal Power Commission[4] may be nullified").

---

[4] FERC was not created until 1977.

On the House side, it was in fact, none other than Rep. George Schwabe of Oklahoma, who introduced H.B. 2956, which contained the amendment to Section 717f now known as subsection (h).  During hearings before the House Committee on Interstate and Foreign Commerce on April 17, 1947, Rep. Schwabe testified:

> I shall take only just a very few minutes to state that when the Natural Gas Act was passed, Congress methinks inadvertently failed to include the power of eminent domain to obtain rights–of-way for pipe lines as they had done in the Power Act. <u>In other words, all this bill seeks to do is to amend the Natural Gas Act by implementing the power given the Federal Power Commission **to obtain rights-of-way for the construction of pipe lines** where the Commission has granted an application and where the pipe-line company cannot get together amicably and privately with the landowner as to a price for the damages that should be awarded or paid for going through his property</u>. [emphasis added].

(Statement of Hon. George B. Schwabe, Testimony Before the House Committee on Interstate and Foreign Commerce, April 17, 1947)(available at: https://play.google.com/books/reader?id=jiYZIOFewz4C&hl=en&pg=GBS.PA377)

Congress delegated to pipeline companies the right of eminent domain when they proposed to construct pipelines or related facilities and could not acquire the underlying real estate by negotiation and contract.  This is because an inability to acquire the real estate threatened the prompt and efficient construction of pipelines, construction aimed at ensuring the distribution of natural gas to American consumers, an endeavor that helped in large measure to power the nation's post-World War II economic expansion.  Congress did not intend for pipeline companies to be able to construct a facility and then, forty years later, seek to condemn the underlying real estate as an internal cost-saving measure.  The

statute, which amounts to a narrowly circumscribed delegation of sovereign authority, was enacted to ensure that the American public's interest in the prompt construction of pipelines and related facilities was unencumbered by compensation disputes or vagaries of state law, and thus to ensure the efficient distribution of natural gas.  It was not intended to be weaponized by pipeline companies in contract negotiations forty years after the pipeline and its related facilities already had been built.  Those are matters between the parties that do not implicate Section 717f(h) of the Natural Gas Act or the policies behind it and relegate the pipeline company to its contractual rights and/or state law rights and remedies.

Three key principles of statutory interpretation guide the Court in its interpretation of Section 717f(h).  First, eminent domain statutes are to be strictly construed to exclude those rights not expressly granted. *Transwestern Pipeline Co. v. 17.19 Acres of Properly Located in Maricopa County*, 550 F.3d 770, 774-75 (9th Cir. 2008); 1A J. Sackman, Nichols on Eminent Domain § 3.03[3][d] [07] (rev.3d ed)("[t]he grant of authority to condemn for specific purposes must be construed as limited to the enumerated purposes."   This is particularly important when the sovereign power of eminent domain has been delegated by Congress to private entities. *Cf. Humphries v. Williams Natural Gas Co*., 48 F.Supp.2d 1276, 1281 (D. Kan. 1999)(distinguishing another court's opinion "because it fails to recognize that the gas company bringing the condemnation action is a private corporation, and that unlike the federal government, its <u>only</u> authority to condemn property is grounded in § 717f(h)") [emphasis added].  Put simply, Plaintiff's <u>only</u> rights, as a private, non-governmental entity, to seize the property of  individual citizens of the United States, are

7

grounded entirely upon the language of a single subsection of a statute, one which must be strictly construed so as to exclude any powers not expressly granted.

Second, when a statute utilizes the conjunctive "and" then <u>all</u> requirements must be satisfied. *See e.g., City of Rome v. United States*, 446 U.S. 156, 172 (1980) ("By describing the elements of discriminatory purpose and effect in the conjunctive [by using "and"], Congress plainly intended that a voting practice not be precleared unless *both* discriminatory purpose and effect are absent."); *Qwest Communications Int'l, Inc. v. FCC*, 398 F.3d 1222, 1236 (10th Cir. 2005)("The use of the conjunctive 'and' in the phrase 'preserve and advance universal service,' or 'preservation and advancement of universal service,' clearly indicates that the Commission cannot satisfy the statutory mandate by simply doing one or the other"); 2A Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION § 45:12 (6th ed.2003)("Where two or more requirements are provided in a section and it is the legislative intent that all of the requirements must be fulfilled in order to comply with the statute, the conjunctive "and" should be used. Statutory phrases separated by the word "and" are usually to be interpreted in the conjunctive").

Third, as the United States Supreme Court has recognized on more than one occasion, "the title of a statute or section can aid in resolving an ambiguity in the legislation's text." *INS v. Nat'l Center for Immigrants Rights, Inc.*, 502 U.S. 183, 189 (1991), *citing Mead Corp.* v. *Tilley,* 490 U.S. 714, 723 (1989); *FTC* v. *Mandel Bros., Inc.,* 359 U. S. 385, 388-389 (1959).

An application of these principles to Section 717f(h) makes clear that it contains a temporal component designed to effectuate the right of eminent domain in a specific

circumstance – when a pipeline company cannot by contract obtain the rights to real estate to <u>construct</u> a proposed FERC-approved pipeline or related facilities previously approved by FERC.  It cannot be interpreted reasonably to extend to pipeline companies the perpetual right of eminent domain long <u>after</u> the pipeline or facility approved by FERC has been constructed.  For those situations, the pipeline company must rely on its own negotiations and/or its state law rights and remedies.  C*f. Panhandle Eastern Pipe Line Co. v. Public Svc. Comm. of Indiana,* 332 U.S. 507, 517-18 (1947)("The Act was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way").

As applied to this case, in addition to the legislative history cited above, these principles demonstrate the lack of federal court jurisdiction and/or a cognizable claim for relief because Plaintiff's allegations make clear that it does not fall within the scope of Section 717f(h).

First, the title of subsection (h) alone clearly reflects that the right of eminent domain that Congress delegated to pipeline companies pertained to their *construction*.  Here, the compressor station was constructed and/or expanded decades before this suit was filed. *See* Complaint at ¶ 30 [Dkt. 1]. This cannot be overemphasized.  When Congress itself described the sum and substance of what it intended Section 717f(h) to achieve, it made clear that the right of eminent domain was to allow for the *construction* of pipelines and their related facilities.  Congress, which knew how to draft and describe a statute, could easily have omitted the word "construction" from Section 717f(h)'s title had it intended to confer a broad, perpetual right of eminent domain long after construction.

Second, and most important from a textualist perspective, the plain language of Section 717f(h) reflects that, with respect to condemnation of pipeline courses, the contemplated right of eminent domain is that necessary for the condemnor to do three things: construct, operate **and** maintain the pipeline. Here, the property sought by Plaintiff is only necessary to continue *operating* its pipeline, but <u>not</u> to construct or even maintain it.

As Representative Schwabe alluded to prior to the bill's enactment, Section 717f(h) was taken almost verbatim from 16 U.S.C. § 814, a section of the Federal Power Act. *See also* S. Rep. No. 80-429 (1947). However, Section of 814 of the FPA did <u>not</u> use the conjunctive "and," but rather the disjunctive "or." Section 814 states:

> When any licensee cannot acquire by contract or pledges an unimproved dam site or the right to use or damage the lands or property of others necessary to the construction, maintenance, **or** operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with any improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts.

It is telling that when Congress modeled Section 717f(h) of the NGA after Section 814 of the FPA, it saw fit to use "and" rather than "or." Section 717f(h) reflects, in that regard, a more intentionally circumscribed delegation of Congressional authority, a truth further reflected by the title of 15 U.S.C. §717f(h), but not reflected in the title of 16 U.S.C. § 814.

The above discussion is important because it informs the subsection's subsequent use of the word "location" and it is that term that governs here. The statute does not define the word. *See* 15 U.S.C. § 717a. However, as the Tenth Circuit has noted, "Where a statute contains no definition of the term in question, the general rule is that the word is to be interpreted in its ordinary, everyday sense." *United States v. Mayberry*, 774 F.2d 1018, 1020 (10th Cir. 1985), *superseded on other grounds*, 18 U.S.C. § 3013(d)(1988). According to Webster's Dictionary, the word "location" may certainly describe "a tract of land designated for a purpose," *i.e.*, the land itself. However, it may also describe "*the act or process of locating*." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11TH ed. 2003) [emphasis added]. *See also* BLACK'S LAW DICTIONARY AT 940 (6th ed.1990)(defining "location" as "[s]ite or place where something is or may be located. *Act of locating*") [emphasis added].

In Section 717f(h), Congress used "location" in the latter sense. In short, Congress delegated to pipeline companies the right of eminent domain when and only when they were in the "act or process of locating" a compressor station authorized by FERC. Here, the compressor station has already been located – it sits and has for decades sat on the property. Congress did not delegate to pipeline companies a perpetual right to condemn property at their leisure after they had already located a compressor station thereon and later decided for financial, tax or accounting reasons that they would rather own the real estate in fee rather than lease it.

Third, if there is any doubt concerning the application of these principles to Section 717f(h), the statute is to be construed strictly against Plaintiff and only those

powers of eminent domain expressly granted should be extended to it.  Plaintiff is not

entitled to the benefit of the doubt as regards the Court's interpretation of the statute.

Rather, Landowners, the individual American citizens whose property is being taken

against their will, are entitled to a strict interpretation thereof.

While Plaintiff may contend that it would be inequitable to interpret the statute in

this manner and relegate it to its state law remedies, remedies it cannot show to be

inadequate, this is inaccurate for two reasons.  First, Plaintiff *had* a contractual remedy

under its lease that, had it been utilized, would have allowed it to avoid its current situation.

Plaintiff simply failed to avail itself of its contractual rights.   In fact, Section 717f(h)'s

right of eminent domain is triggered only when the pipeline company "cannot acquire by

contract, or is unable to agree with the owner of property to the compensation to be paid

for" the land upon which the facility will sit.  Pursuant to the lease between Plaintiff and

Landowners, six (6) months prior to the expiration of the lease term, Plaintiff could have

entered into negotiations with Landowners concerning the cost to extend the term of the

lease and, if no agreement could be reached, the matter would have been submitted to a

neutral appraiser for a final determination of the amount, which would have been binding

on the parties.  It failed to do so.  (Lease at p.2, fourth paragraph)(Exh. 1).[5]  Plaintiff cannot

now tell the Court that it was unable to acquire by contract or to agree with Landowners

---

[5] Plaintiff specifically referenced the Lease in Paragraph 33 of the Complaint.  Pursuant to
*Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), the Lease may be considered in
connection with the instant motion without converting it to one for summary judgment.

concerning the compensation for an extension of its lease when it failed to take advantage of the provisions of the very agreement for which it had already bargained.

Second, although Plaintiff now maintains its compressor station on their property without their consent, which constitutes a trespass, Landowners have not sought mandatory injunctive relief here or elsewhere or otherwise demanded an immediate removal thereof. The interstate flow of natural gas is not impeded, but rather continues unabated through Plaintiff's pipeline system.   The dispute between the parties is one of just compensation for the proposed taking of their real estate. This is not a dispute in which Landowners have, through their own recalcitrance, held up the construction of a pipeline or related facilities or the distribution of natural gas to consumers.   Section 717f(h) provides no federal condemnation remedy to Plaintiff or to other pipeline operators seeking to utilize the power of eminent domain 40-years post-construction in an attempt to effect a minor cost savings for its stakeholders at landowners' expense.

## CONCLUSION

For the reason set forth above, Plaintiff Panhandle Eastern Pipe Line Co., LP's Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

Respectfully submitted,

s/ John D. Stiner
John D. Stiner, OBA #18148
Stiner Law Firm, PLLC
119 N. Robinson, Suite 630
Oklahoma City, OK 73102
Telephone: (405) 602-1591
Facsimile: (405) 602-1754
Email:john@stinerlaw.com

and

Joseph H. Bocock, OBA #0906
Bocock Law PLLC
119 N. Robinson, Suite 630
Oklahoma City, OK 73102
Telephone: (405) 602-1591
Facsimile: (405) 602-1754
Email: joe@bococklaw.com

**ATTORNEY FOR DEFENDANTS
ANITA TARRALBO, DONNA
HOEHNER AND TODD WARD**

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jason Goodnight

s/ John D. Stiner
John D. Stiner