## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PANHANDLE EASTERN PIPE LINE COMPANY, LP, a Delaware Limited Partnership,<br><br>        Plaintiff,<br><br>v.<br><br>ANITA TARRALBO, *et al.*,<br><br>        Defendants. | Case No. CIV-20-751-D |

## **ORDER**

Before the Court is Plaintiff Panhandle Eastern Pipe Line Company, LP's Motion for Partial Summary Judgment [Doc. No. 56]. Defendants Anita Tarralbo, Donna Hoehner, and Todd Ward filed a response [Doc. No. 59], to which Plaintiff replied [Doc. No.60]. The matter is fully briefed and at issue.

### BACKGROUND

This is a condemnation case brought by a natural gas company to acquire a 20-acre tract of land by eminent domain. Plaintiff, Panhandle Eastern Pipe Line Company, LP, is a private entity that operates the Cashion Compressor Station located in Kingfisher County, Oklahoma. Plaintiff operates this station pursuant to two certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission (FERC). The FERC issued the first certificate in 1979 and the second certificate in 1981. According to these certificates, the Cashion Compressor Station is necessary and integral to Plaintiff's ability to transport natural gas through its pipelines in interstate commerce.

Equipment for the Cashion Compressor Station was installed shortly after the FERC issued each certificate. From 1979 to 2019, Plaintiff leased the land on which the compressor station is located, most recently executing a 10-year lease in 2009. Defendants Anita Tarralbo, Donna Hoehner, and Todd Ward are the current owners of the property. After the 2009 Lease expired, the parties agreed to a one-year extension, which ended on April 20, 2020.

After expiration of the lease extension, the parties engaged in negotiations for several months, during which Plaintiff made multiple offers to purchase the property. But Defendants rejected each offer, and the parties could not reach an agreement. Plaintiff then filed this eminent domain action pursuant to the Natural Gas Act (NGA), 15 U.S.C. § 717 *et seq*. Now, by its motion, Plaintiff seeks an order from the Court declaring that § 717f(h) of the NGA authorizes it to exercise eminent domain to acquire the property.

## STANDARD OF DECISION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322–23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

Matters of statutory interpretation present questions of law "appropriate for resolution on summary judgment." *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citation omitted). When interpreting statutory language, the Court's duty is to determine congressional intent by beginning with the "plain language of the law." *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000). Traditional canons of statutory interpretation guide "judges [in] determin[ing] the Legislature's intent as embodied in particular statutory language." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). However, such guides "need not be conclusive and are often countered . . . by some maxim pointing in a different direction." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). Therefore, the Court must analyze the statute as a whole

and look to the "disputed language in context, not in isolation," when ascertaining congressional intent from statutory text. *True Oil Co. v. Comm'r*, 170 F.3d 1294, 1299 (10th Cir.1999) (internal quotations omitted).

## DISCUSSION

"Federal Rule of Civil Procedure 71.1 governs the procedural aspects of NGA condemnation proceedings." *N. Nat. Gas Co. v. L.D. Drilling*, 862 F.3d 1221, 1227 n.6 (10th Cir. 2017). Rule 71.1 "contemplates a two-step procedure." *Gov't of Virgin Islands v. 19.623 Acres of Land*, 536 F.2d 566, 569 (3d Cir. 1976). In the first step, the Court determines whether the taking is proper. 2 Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary* Rule 71.1 (2021); *see Gov't of Virgin Islands*, 536 F.2d at 569. If the Court finds that the taking is proper, the case proceeds to the second step of determining "the just compensation that must be paid for the property being taken." Gensler & Mulligan, *supra*, Rule 71.1.

**I.    Step I: The taking is proper because the NGA authorizes Plaintiff to acquire the property by exercising eminent domain.**

The NGA authorizes natural gas companies holding a certificate of public convenience and necessity to acquire certain real property by eminent domain. 15 U.S.C. § 717f(h). It states:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the

district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided*, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

*Id.* "A federal district court's sole function in an eminent domain proceeding under the NGA is to order condemnation in accordance with a FERC certificate." *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1256 (D. Kan. 2002) (citing *Williams Natural Gas Co. v. City of Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989)). Defendants challenge the Court's subject-matter jurisdiction and Plaintiff's ability to meet the requirements of § 717f(h).

Section 717f(h) appears to provide identical requirements to establish the Court's subject-matter jurisdiction and for Plaintiff to obtain substantive relief. *See Sabal Trail Transmission, LLC. v. 7.72 Acres*, No. 3:16-CV-173-WKW, 2016 WL 3671419, at *3 (M.D. Ala. July 8, 2016) ("There is persuasive authority in the federal case law that § 717f(h) provides both the jurisdictional prerequisites for an eminent domain action and the components for obtaining substantive relief."). But 28 U.S.C. § 1331 could also serve as a jurisdictional basis for this action because it arises under the NGA, a federal statute.[1] *See Rover Pipeline LLC v. Rover Tract No. PA WA HL-004.500T*, 813 F. App'x 740, 744 (3d

---

[1] Defendants offer no argument as to why the Court could not exercise jurisdiction over this matter pursuant to § 1331.

Cir. 2020) (unpublished); *Sabal Trail*, 2016 WL 3671419, at *3. Regardless, if Plaintiff satisfies the 717f(h) requirements, the Court clearly has subject-matter jurisdiction.

Therefore, to succeed in this eminent domain action, and to establish subject-matter jurisdiction under § 717f(h), Plaintiff must show:

1. it holds a certificate of public convenience and necessity covering the property owned by Defendants;
2. it cannot acquire the property by contract or is unable to agree with Defendants on the compensation to be paid for the property; and
3. the value of the property exceeds $3,000.

Plaintiff clearly meets the first and the third requirement: it holds two certificates of public convenience and necessity covering the property, and the value of the property indisputably exceeds $3,000. Defendants challenge only Plaintiff's ability to meet the second requirement. They argue the parties reached an agreement as to the compensation for the property and that Plaintiff does not seek to exercise eminent domain for the "location" of the compressor station since the station has been on the land for over 40 years. The Court will take each argument in turn.

First, the parties have not reached an agreement as to the compensation for the property. Defendants argue a provision in the 2009 Lease constitutes an agreement as to the compensation for the land. That provision states:

> Lessor and Lessee agree that beginning six (6) months prior to the end of the primary term of this lease, they will negotiate in good faith an extension of the lease term. In the event Lessor and Lessee are unable to agree on a fee for the extended lease term, they agree to submit the matter to a qualified neutral appraiser for a determination of the fair market lease value for the leased premises for the extended lease term, and such appraisal shall become the fee payable by Lessee to Lessor for the extended lease term; provided

6

>that such fee shall not be lower than the fee in effect on the last day of the primary lease term.

2009 Lease p.2 [Doc. No. 59-3]. Defendants argue this provision is evidence of an agreement to extend the lease term to 2029. Defendants' argument is unavailing.

The 2009 Lease, including the one-year extension, indisputably expired on April 20, 2020. After the one-year extension, the parties never reached an agreement for another extended lease term. And nothing in the lease provision required an extension of the term; the provision cited by Defendants merely provided a procedure for extension negotiations. After expiration of the lease, Plaintiff made several attempts to purchase the land. Defendants rejected each offer; the parties could not agree on a purchase price. It is clear from undisputed facts that Plaintiff has been unable to acquire the property by contract and is unable to agree with Defendants on compensation for the property.

Second, Defendants' argument that the right of eminent domain under § 717f(h) is limited to new pipeline construction or natural gas equipment installation is also unavailing. According to Defendants, the term "location" in 717f(h) should be construed as a noun describing the act of locating, not as a noun describing a physical place. If Defendants were correct, § 717f(h) would not authorize Plaintiff to exercise eminent domain to acquire the property because the compressor station was installed on the property over 40 years ago, shortly after the FERC issued the certificates of public convenience and necessity covering the property.

7

Defendants' interpretation is refuted by the plain language of § 717f(h).[2] The NGA does not define "location." When a term is left undefined in a statute, courts "typically give the phrase its ordinary meaning." *In re Woods*, 743 F.3d 689, 698 (10th Cir. 2014) (quotation omitted). As evinced by the opposing dictionary definitions offered by the parties,[3] "location," viewed in isolation within § 717f(h), could be susceptible to multiple meanings. Ordinary meaning, however, cannot be determined in isolation. *See True Oil Co.*, 170 F.3d at 1299.

> A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted). The remainder of the NGA clarifies the ordinary meaning of "location" in § 717f(h).

Although the statute does authorize eminent domain to acquire interests in land "to construct" pipelines, it does not limit that authorization to new construction. Section 717f(h) also expressly authorizes eminent domain to acquire interests in land necessary to "operate" and "maintain" pipelines. Operation and maintenance of natural gas pipelines are activities almost exclusive to post-construction pipeline management. These words

---

[2] Notably, Defendants cite no authority, and the Court is unaware of any, that so limits the application of § 717f(h).

[3] Black's Law Dictionary defines "location," first, as "[t]he specific place or position of a person or thing," and, second, as "[t]he act or process of locating." *Location*, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw.

plainly extend the authorization to exercise eminent domain in § 717f(h) to obtain land interests after pipeline systems have been constructed.

Further, § 717f(h) may be invoked only by holders of a certificate of public convenience and necessity. Section 717f(c) controls when the FERC may issue such certificates. It provides in relevant part:

> No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or *undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof*, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . . .

§ 717f(c) (emphasis added). In other words, natural gas companies must obtain a certificate under § 717f(c) before they can construct, extend, *acquire*, or *operate* natural gas facilities used in transportation of gas under the FERC's jurisdiction. Clearly, § 717f(c) is not limited to new construction of pipelines or to the act of locating natural gas equipment, and § 717f(h) must be interpreted in a way that renders it compatible with the rest of § 717f. *See United Sav. Ass'n of Texas*, 484 U.S. at 371. The authorization in § 717f(h) to exercise eminent domain is not limited, as Defendants contend, to new pipeline construction; "location" must, therefore, mean the physical place or position of the natural gas equipment.

Consequently, Plaintiff has established that it seeks to exercise eminent domain to acquire the property necessary for the location of its compressor stations. Plaintiff thus satisfies the second § 717f requirement.

In sum, there is no genuine dispute of material fact that Plaintiff is the holder of two certificates of public convenience and necessity authorizing the operation of the Cashion Compressor Station, that the FERC has determined that the property owned by Defendants is necessary for the compressor station, and that Plaintiff has been unable to acquire the property by contract. Therefore, under § 717f(h), the Court has subject-matter jurisdiction and Plaintiff is authorized to exercise eminent domain to acquire the property. Accordingly, Plaintiff's motion for partial summary judgment is granted.

## II.   Step II: Procedure for the determination of just compensation

This ruling marks the conclusion of the first phase of this condemnation proceeding. Under Rule 71.1(h), the second phase—in which the issue of just compensation is determined—may proceed by tribunal, jury trial, commission, or bench trial. Since the NGA does not designate a tribunal to determine compensation, the second phase may not proceed by tribunal. *Rockies Express Pipeline, LLC v. 4.895 Acres of Land*, No. 2:08-cv-554, 2008 WL 5050644, at *1 (S.D. Ohio Nov. 20, 2008); *see Rover Pipeline LLC v. Kanzigg*, No. 2:17-cv-105, 2017 WL 5068458, at *3 (S.D. Ohio June 1, 2017). And since Defendants made timely jury demands in their answer to the complaint and in their answer to the amended complaint, [Doc. Nos. 12 and 54], the second phase may not proceed by bench trial, either. Fed. R. Civ. P. 71.1(h)(1)(B).

"If a party has demanded a jury, the court may instead appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons." Fed. R. Civ. P. 71.1(h)(2)(A). The

Court, therefore, must determine whether a jury or a three-person commission should determine the issue of just compensation. Fed. R. Civ. P. 71.1(h)(2)(A).

The Tenth Circuit has instructed district courts to appoint a commission, and thereby deny jury trial, "only in exceptional cases where because of peculiar circumstances trial by jury was inadvisable." *United States v. Theimer*, 199 F.2d 501, 503 (10th Cir. 1952); *see also United States v. Wallace*, 201 F.2d 65 (10th Cir. 1952); *United States v. Waymire*, 202 F.2d 550 (10th Cir. 1953); *United States v. Hardage*, 58 F.3d 569 (10th Cir. 1995). The Court finds that input from the parties on this issue would be helpful to determining whether this is one of those exceptional cases.

## CONCLUSION

For the foregoing reasons, the Court finds that § 717f(h) authorizes Plaintiff Panhandle Eastern Pipe Line Company to exercise eminent domain to acquire the property owned by Defendants Anita Tarralbo, Donna Hoehner, and Todd Ward.

**IT IS THEREFORE ORDERED** that the Motion for Partial Summary Judgment [Doc. No. 56] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within 21 days of this Order, Plaintiff shall advise the Court of whether the character, location, or quantity of the property justifies the appointment of a commission to determine just compensation. Defendants shall respond to Plaintiff's filing within 14 days. Neither document shall exceed ten pages.

**IT IS SO ORDERED** this 8th day of February, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge