IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PANHANDLE EASTERN PIPE LINE COMPANY, L.P., a Delaware limited partnership,<br><br>            Plaintiff,<br><br>v.<br><br>ANITA TARRALBO, *et al.*,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)   Case No. CIV-20-751-D<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Before the Court is Plaintiff's Brief on the Legal Issues of the Date of Taking and Ownership of Three Buildings on Defendants' Property [Doc. No. 86]. Defendants Anita Tarralbo, Donna Hoehner, and Todd Ward[1] responded in opposition [Doc. No. 87], and Plaintiff replied [Doc. No. 88]. The matter is fully briefed and at issue.

*Background*

Plaintiff Panhandle Eastern Pipe Line Company, L.P., operates the Cashion Compressor Station pursuant to two certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC"). The station is located on a 20-acre tract of land in Kingfisher County, Oklahoma ("Property"), which is owned by Landowner Defendants. FERC issued the first certificate in 1979, and the second certificate in 1981. According to these certificates, the Cashion Compressor Station is necessary and integral to Plaintiff's ability to transport natural gas through its pipelines in interstate

---

[1] These three individuals are collectively referred to herein as "Landowner Defendants."

commerce.

Plaintiff occupied the Property from April 20, 1979, to April 20, 2020, pursuant to three separate leases and one lease extension.[2] During this period, Plaintiff constructed three buildings on the Property ("Buildings"); two house compressor units, and the third functions as an office supporting Plaintiff's operation. Since their most recent lease expired, the parties have been unable to reach a new agreement despite several months of negotiations. Although no lease is in effect, Plaintiff continues to operate the Buildings on the Property.

Seeking to condemn the Property, Plaintiff filed the present action pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.*, in late 2020. In July of 2021, Plaintiff sought judgment from the Court that, pursuant to 15 U.S.C. § 717f(h), it was authorized to acquire the Property through eminent domain.

The Court granted Plaintiff's motion for partial summary judgment. *See* 2/8/2022 Order [Doc. No. 74]. Although the Court determined that the NGA authorized Plaintiff to acquire the Property, it did not address the issue of just compensation. In a separate order, the Court directed the parties to file briefs addressing the legal issues regarding (1) the date of taking, and (2) the ownership of the Buildings situated on the Property. *See* 4/27/2022 Order [Doc. No. 83]. Each issue must be resolved before proceeding to a jury trial in this

---

[2] The first lease was effective from April of 1979 to April of 1999, the second from April of 1999 to April of 2009, and the third from April of 2009 to April of 2019. The lease extension continued the third lease one year beyond its primary term, to April 20, 2020.

matter.[3]

## *Discussion*

Under the NGA, natural gas companies possessing a certificate of public convenience and necessity may acquire certain real property by exercising the right of eminent domain. Specifically, the NGA states:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . , it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated.

15 U.S.C. § 717f(h).

Although Section 717f(h) contemplates conformance with the practices and procedures of the state in which the property is located, reliance on these procedures "ended with the adoption of [Federal] Rule [of Civil Procedure] 71.1 . . . which created a nationally uniform approach to eminent domain proceedings, and which, because it conflicted with Section 717f(h), superseded the state-conformity language in the NGA. Courts now generally agree that condemnation proceedings under the NGA should follow Rule 71.1." *Transcontinental Gas Pipe Line Co., LLC v. Permanent Easements for 2.14 Acres &*

---

[3] The Court rejects Landowner Defendants' argument that a ruling regarding the date of taking constitutes an impermissible advisory opinion. The Court is required to determine the date of taking, as a matter of law, before this matter may proceed to trial. Thus, there exists a "present, live controversy," and a legal determination regarding the date of taking does not amount to an advisory opinion. *Hall v. Beals*, 396 U.S. 45, 48 (1969).

*Temporary Easements for 3.59 Acres in Conestoga Twp., Lancaster Cnty., Pa.*, 907 F.3d 725, 728-29 (3d Cir. 2018); *N. Nat. Gas Co. v. L.D. Drilling*, 862 F.3d 1221, 1227 n.6 (10th Cir. 2017) ("Federal Rule of Civil Procedure 71.1 governs the procedural aspects of NGA condemnation proceedings.").

Pursuant to Fed. R. Civ. P. 71.1, a court must first determine whether the taking is proper; as noted, the Court previously found that the taking of Landowner Defendants' Property is proper as a matter of law. *See* 2/8/2022 Order. Accordingly, the case must proceed to the next step: determining the just compensation that must be paid for the Property. 2 Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary* Rule 71.1 (2021).

Under Rule 71.1(h), the issue of just compensation may be determined by tribunal, jury trial, commission, or bench trial. In a previous order, the Court concluded that a jury should determine the issue of just compensation. *See* 4/1/2022 Order [Doc. No. 82]. Although the issue of "just compensation" is left to the jury, the Court must determine the date of taking and the extent of the parties' property rights as matters of law. *See United States v. Reynolds*, 397 U.S. 14, 19 (1970) (Rule 71 "provides that, except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented."); *see also United States v. Ledford*, No. 98-6444, 1999 WL 1244495, at *1 (10th Cir. Dec. 21, 1999) ("Determination of the manner of deciding the date of taking is a question of law subject to de novo review.").

For the reasons that follow, the Court concludes that (1) the date of taking is April 21, 2020, and (2) Landowner Defendants are not entitled to compensation for the value of

4

the Buildings on the Property.

I.     **Date of Taking**[4]

The parties disagree regarding the date of taking. Plaintiff maintains that the taking occurred once it entered into possession of the Property beyond the extended lease term. To support its position, Plaintiff primarily relies on *United States v. Dow*, 357 U.S. 17 (1958). Plaintiff argues that, under *Dow*, the date of taking occurs upon entry and possession of the property, even if title has not passed to the condemnor.

As a general rule, "the United States[5] may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings." *Dow*, 357 U.S. at 21. In *Dow*, the Court noted that "the passage of title does not necessarily determine the date of 'taking.' The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues." *Dow*, 357 U.S. at 21-22.

---

[4] The parties do not disagree that, to determine the date of taking, the Court must apply federal law. *See N. Nat. Gas Co. v. Approximately 9117 Acres*, No. 10-1232-DWB-MLB, 2013 WL 3328773, at *4-7 (D. Kan. July 2, 2013) (applying federal law to determine the date of taking in a condemnation proceeding brought pursuant to the NGA); *Kern River Gas Transmission Co. v. 8.47 Acres of Land*, No. 2:02-CV-694, 2006 WL 1472602, at *5 (D. Utah May 23, 2006) (same).
[5] "The same is true for private delagatees" pursuant to Section 717f(h) of the NGA. *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2257 (2021).

Thus, in *Dow*, although the government filed a declaration of taking *after* entering into possession, this filing did not "vitiate[] the effect of the earlier entry." *Id.* at 22. Rather, the Court held that, in such an instance, "the date of 'taking' is the date on which the Government entered and appropriated the property to public use." *Id.* at 23. To hold otherwise, the Court noted, "would be to undermine policies determining the other incidents of the Government's obligation to provide just compensation." *Id.* at 24.

In the *Dow* Court's view, holding that the "date of taking" operates only upon the "time of filing" would "open the door to anomalous results." *Id.* For instance, "if the value of the property changed between the time the Government took possession and the time of filing, payment as of the latter date would not be an accurate reflection of the value of what the property owner gave up and the Government acquired." *Id.* Additionally, "because interest for delay in payment would not begin to accrue until payment of compensation is due, the Government would be absolved of interest until it chose to file a declaration of taking, even though it had already been in possession, to the exclusion of the property owner, for some time." *Id.* Finally, the Court noted that "[b]ecause of the uncertainty when, if ever, a declaration would be filed after the Government's entry, manipulations might be encouraged which could operate to the disadvantage of either the landowner or the United States." *Id.* at 25. Indeed, an officer could "reduce the 'just' compensation due the property owner by staying his hand until a market situation favorable to the Government had developed." *Id.*

Turning to the present set of facts, Landowner Defendants "do not contend that a federal court, if the facts warrant such relief, cannot declare that a taking occurs on the date

6

the condemnor enters into possession." Defs.' Resp. Br. at 14. Rather, they argue that "*Dow* is not a simple rule" and that "[m]ere presence on the property" does not conclusively establish the date of taking. *Id.* Instead, they urge the Court to engage in a "fact-intensive" analysis to determine "whether the level of dominion and control exercised by [Plaintiff] was sufficient to constitute a taking." *Id.*

The Court concludes that the date of taking occurred on April 21, 2020, the first day that Plaintiff occupied the Property, to the exclusion of Landowner Defendants, beyond the extended lease term. Although Landowner Defendants argue that they are "perfectly free to enter and to utilize their property in any manner they s[ee] fit," the current record reflects otherwise. *Id.* at 16. Indeed, since April 21, 2020, Plaintiff has remained in exclusive possession and control of the Cashion Compressor Station, which it operates pursuant to two certificates of public convenience and necessity issued by FERC. Plaintiff continues to operate the fenced-in station despite a 2009 lease provision, which states: "Should lease be terminated, said premises are to be restored to as near as possible the condition in which it existed prior to lease." *See* Pl.'s Br. [Doc. No. 86], Ex. 1-C ("2009 Lease") at 1. It is apparent that the Property has been "entered and appropriated . . . [for] public use," beyond the terms set forth in the parties' lease. *Dow*, 357 U.S. at 23. Accordingly, for purposes of just compensation, the date of taking is April 21, 2020.

This conclusion underscores the Supreme Court's rationale in *Dow*. To hold that the date of taking occurred beyond April 21, 2020, would absolve Plaintiff of any obligation to pay interest during the interim period, "even though it had already been in possession, to the exclusion of the property owner, for some time." *Dow*, 357 U.S. at 24. Holding that

the taking occurred later, as requested by Landowner Defendants, would "undermine policies determining the other incidents of the Government's obligation to provide just compensation." *Id.*

Nor would a later date of taking "be an accurate reflection of the value of what [Landowner Defendants] gave up and [Plaintiff] acquired." *Id.* A holding that the date of taking did not occur on April 21, 2020, may encourage future manipulations, allowing condemnors to stay their hand "until a [favorable] market situation" develops. *Id.* at 25. And, "[c]onversely, landowners might be in a position to increase unduly the Government's liability. For instance, if a single tract of land were worth more than the sum of its component parcels, owners of adjacent condemned properties could consolidate their holdings after the Government's entry solely for the purpose of obtaining a larger award." *Id.* at 25.

This conclusion also accords with other decisions addressing factually analogous sets of circumstances. *See United States v. 14.54 Acres of Land*, 599 F.Supp. 123, 125 (S.D.N.Y. 1984); *United States v. Herrero*, 416 F.2d 945 (9th Cir. 1969); *Kern River Gas Transmission Co. v. 8.47 Acres of Land*, No. 2:02-CV-694, 2006 WL 1472602 (D. Utah May 23, 2006); *United States v. Ledford*, No. 98-6444, 1999 WL 1244495 (10th Cir. Dec. 21, 1999).

For instance, *14.54 Acres of Land* involved a condemnation proceeding brought pursuant to 40 U.S.C. §§ 257-258a. Prior to filing the condemnation action, the government was the lessee under a lease that expired on June 30, 1977. During the term of the lease, the government constructed a building used for guiding aircraft. After the lease expired,

8

the government and the landowner-defendant were unable to agree to new lease terms, so the government exercised its power of eminent domain. Despite remaining in possession of the land after the lease had expired, the government did not file a declaration of taking until nearly a year later. The court held that the date of taking occurred upon the expiration of the lease, because the government "retained physical possession of the property after the lease expired . . . and continued to use the land after that date." *14.54 Acres of Land*, 599 F.Supp. at 125.

Similarly, *Herrero* involved a condemnation proceeding initiated by the government pursuant to 40 U.S.C. § 258a. The property at issue constituted the principal public highway of Guam, which was constructed by the government as the lessee under certain leases. The leases expired in June of 1962, but no legal action was taken by the government until it filed a declaration of taking in 1965. The Ninth Circuit affirmed the lower court's holding that, "upon expiration of the leases in 1962, continued [g]overnment possession of the lands constituted a taking by seizure under *Dow*." *Herrero*, 416 F.2d at 946. The court reasoned that "the act of the [g]overnment in continuing to maintain a permanent highway . . . clearly constituted seizure under *Dow*. The owners were completely and permanently excluded from enjoyment." *Id.* at 947.

In addition, *Kern River*, a decision from a district court within the Tenth Circuit, is also persuasive. The plaintiff in *Kern River* was a natural gas pipeline operator who was permitted to construct an underground pipeline on the city of Salt Lake's property, without having to pay for such a right, pursuant to a consent agreement with the city. It began constructing the pipeline on August 5, 2002. After the parties were unable to agree to terms

for a permanent easement, the pipeline operator initiated a condemnation proceeding pursuant to Section 717f(h) of the NGA. Similar to the present case, the only reason a condemnation suit was filed months after the consent agreement expired was because the parties were "negotiating in good faith to try to obtain the easement through contract." *Kern River*, 2006 WL 1472602, at *5.

Although the pipeline operator argued that the taking occurred on the day it began constructing the pipeline—August 5, 2022—the city claimed that the operator's suggested date was improper because, at that time, the operator occupied the property pursuant to the city's consent. The court held that the operator's "suggested date is more logical and consistent with the concepts of eminent domain. [The operator] took actual physical possession of the property on August 5, 2002" without paying for such a right. *Id.* at *4 (citing *Dow*, 357 U.S. at 22); *see also id.* (acknowledging that the United States Supreme Court has noted that "physical appropriation" is the "paradigm of a taking") (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 nn. 8-9 (1982)).

Finally, an unpublished decision from the Tenth Circuit, *United States v. Ledford*, is also instructive. In *Ledford*, the government initiated a condemnation action pursuant to 40 U.S.C. § 258a to condemn land located just south of a dam. The government argued that the date of taking was the date specified in the declaration of taking, but the landowner-defendants claimed that the taking occurred several years earlier, at the time the "government's lake construction project caused stored water to interfere with use of their property," in the form of "flooding and other damage." *Ledford*, 1999 WL 1244495, at *1-2.

The district court concluded that the date of taking was the same date listed in the declaration of taking. Challenging the district court's decision, the landowner-defendants argued that the date of taking instead occurred on "the date the government actually took their property by adversely interfering with it." *Id.* at *2.

The Tenth Circuit vacated the district court's order and remanded for further proceedings. After extensively discussing *Dow*, it ultimately concluded that "the district court should have considered the [landowner-defendants'] argument that the date of taking preceded . . . the date stated in the government's declaration of taking." *Id.* at *5.[6]

Here, as in *14.54 Acres of Land*, *Herrero*, and *Kern River*, although the parties' lease has expired, Plaintiff remains in physical possession of the Property. Rather than restore the Property to the condition in which it existed prior to the lease, Plaintiff continues to operate the Cashion Compressor Station to the exclusion of Landowner Defendants. It is evident that, since April 21, 2020, Plaintiff's operation has prevented Landowner Defendants from the use and enjoyment of the Property. *See Herrero*, 416 F.2d at 947 (concluding a seizure occurred after finding that the property owners "were completely and permanently excluded from enjoyment"); *see 14.54 Acres of Land*, 599 F.Supp. at 125 (holding that the date of taking occurred the day after the lease expired, because the government "retained physical possession of the property after the lease expired . . . and continued to use the land after that date"); *see Kern River*, 2006 WL 1472602, at *5 (finding that, although the parties were "negotiating in good faith to try to obtain the easement

---

[6] A factual dispute precluded the Tenth Circuit from reaching a definitive conclusion regarding the date of taking.

11

through contract," a taking occurred after the pipeline operator entered possession without payment); *see also Ledford*, 1999 WL 1244495, at *5 (holding that the district court should have considered the landowner-defendants argument that the taking occurred at the time the government's project interfered with the use of their property).

Plaintiff has failed to compensate Landowner Defendants for the continued, but unauthorized, use of the Property. Indeed, holding that a taking has not yet occurred, as urged by Landowner Defendants, would "undermine policies determining the other incidents of the Government's obligation to provide just compensation." *Dow*, 357 U.S. at 24. A conclusion that the date of taking occurred at the time Plaintiff remained on the Property—beyond the term of the lease and to the exclusion of Landowner Defendants—necessarily adheres to the holding and reasoning advanced by the Supreme Court in *Dow*. Accordingly, the Court finds that the date of taking is April 21, 2020.

## II.    Ownership of the Buildings

In addition to the date of taking, the Court must also determine the extent of the parties' property rights, specifically as such rights relate to the Buildings constructed by Plaintiff. To do so, the Court must apply substantive state law.[7] *See N. Nat. Gas Co. v. Approximately 9117 Acres*, 2 F.Supp.3d 1174, 1179 (D. Kan. 2014) ("[S]ubstantive [state] law . . . determines the extent of the parties' property rights and the standards for determining just compensation.") (citing *Columbia Gas v. Exclusive Nat. Gas*, 962 F.2d 1192, 1199 (6th Cir. 1992)); *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy*

---

[7] The parties do not dispute that state law controls the Court's analysis in this regard.

*Cnty.*, 59 F.4th 1158, 1160 (11th Cir. 2023) (state law supplies the meaning of "compensation" under Section 717f(h)).

As discussed, Plaintiff occupied the Property from 1979 to 2020 pursuant to three leases and one lease extension. The 1979 lease provided that Plaintiff:

> [S]hall have the right to construct, maintain, repair, replace thereon, and remove therefrom such valves, meters, regulators, pipes, appurtenances and structures to house the same as its operations from time to time may require.

*See* Pl.'s Br., Ex. 1-A at 1. After executing this lease, Plaintiff constructed the three Buildings at issue. Two such structures contain compressor units, and the third serves as an office to support the compressor facilities. The parties do not disagree that "[j]ust compensation shall mean the value of the property taken,"[8] but disagree as to whether the "property taken" includes the Buildings constructed by Plaintiff.

In support of their argument that they are entitled to compensation for the value of the Buildings, Landowner Defendants rely on Oklahoma Uniform Jury Instruction ("OUJI") 25.2, which states:

> The term "just compensation" means the payment to [Owner] for the taking of [his/her/its] property by [Condemnor] of an amount of money that will make [Owner] whole. In this case this means the fair market value of the property . . . . The property includes the land and any buildings or other things that are attached to the land.

Landowner Defendants argue that this instruction requires a finding that they are entitled to the fair market value of the Buildings because the Buildings are attached to their Property. *See also* Defs.' Resp. Br. at 21 (arguing that Oklahoma law "also makes clear

---

[8] *State of Oklahoma, ex rel. Dep't of Transportation v. Norman Industrial Development Corp.*, 2001 OK 72, 41 P.3d 960 (Okla. 2001).

13

that, for tax purposes, '[a] thing is deemed to be affixed to land when it is attached to it by roots . . . or embedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings . . . .'") (quoting Okla. Stat. tit. 60, § 7).

Under the circumstances here, further analysis of this instruction is appropriate. *See In re T.T.S.*, 2015 OK 36, ¶ 18, 373 P.3d 1022, 1029 (noting that a court should alter or supplement a jury instruction when necessary). Although the cited instruction defines "property" as "the land and any buildings or other things that are attached to the land," it does not appear that this instruction contemplates the current factual scenario.

To aid in its interpretation, the Court turns to Okla. Stat. tit. 27, § 14(A),[9] which states: "[w]here any interest in real property is acquired, an equal interest shall be acquired in all buildings, structures or other improvements located upon the real property." The statute continues:

> For the purpose of determining the just compensation to be paid for any building, structure or other improvement required to be acquired as by subsection A of this section, such building, structure or other improvement shall be deemed to be a part of the real property to be acquired *notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure or improvement at the expiration of his term*, and the fair market value which such building, structure or improvement contributes to the fair market value of the real property to be acquired or the fair market value of such building, structure or improvement for removal from the real property, whichever is greater, shall be paid to the tenant therefor.

Okla. Stat. tit. 27, § 14(B) (emphasis added).

There is no dispute that the Buildings are located on the Property which Plaintiff

---

[9] Title 27 of the Oklahoma Statutes is entitled "Eminent Domain."

now seeks to condemn, and were placed there by Plaintiff at its expense. However, if a tenant—in this case, Plaintiff—retained a right or obligation under a lease to remove buildings, structures, or improvements at the lease's expiration, the fair market value of those buildings, structures, or improvements must be paid to the tenant, as opposed to the property owner. *See* Okla. Stat. tit. 27, § 14(B). Thus, the Court must determine whether Plaintiff preserved a right, under the lease, to remove the Buildings at the time the lease expired. To do so, the Court must analyze the applicable lease and "give effect to the intent of the parties at the time the contract was formed." *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 9, 706 P.2d 523, 529; *see Ferrell Const. Co., Inc. v. Russell Creek Coal Co.*, 1982 OK 24, ¶ 9, 645 P.2d 1005, 1007 ("The construction of an unambiguous contract is a matter of law for the court.").

When analyzing a contract, it "must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context." *Mercury Inv. Co.*, ¶ 9, 706 P.2d at 529. The 2009 Lease provides:

> [Plaintiff] shall have the right to construct, maintain, repair, replace thereon, and remove therefrom such valves, meters, regulators, pipes, appurtenances and structures to house the same as its operations from time to time may require, together with the full right of ingress and egress to and from said premises, together with the right to authorize and permit any Company receiving service from [Plaintiff] through [Plaintiff's] aforesaid facilities, to construct, maintain, repair, replace thereon and remove therefrom such facilities of such Company as such Company may deem necessary or desirable in connection with the rendition of service by [Plaintiff] to such Company.

2009 Lease at 1. It also states:

> [Landowner Defendants] acknowledge[] that the facilities to be operated and maintained by [Plaintiff] on the leased premises are a part of Lessee's

15

> interstate natural gas pipeline system installed, operated and maintained pursuant to certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission.

*Id.* at 2.

Landowner Defendants urge a narrow reading of the 2009 Lease. Specifically, they argue that, because the lease does not expressly provide for the removal of "compressor units, cooling equipment, [or] backup generators," Plaintiff lacked any right to remove the Buildings that it constructed, at its own expense, upon termination of the lease. Defs.' Resp. Br. at 28. Absent such a removal right, Landowner Defendants assert that Plaintiff must compensate them for the value of the Buildings.

After considering the contract in its entirety, the Court rejects the interpretation advanced by Landowner Defendants. Indeed, the certificates of public convenience expressly referenced in the lease contemplate Plaintiff's construction, and continued operation, of the Cashion Compressor Station, along with "other pipeline and related facilities . . . necessary to connect new supplies of gas to its system." *See* First Am. Compl., Ex. 1 [Doc. No. 51-1] at 2-3, 5; *see also id.* at 7, 10 (authorizing Plaintiff to "operate pipeline and compressor facilities" which "will allow [Plaintiff] to attach new sources of supply directly to its pipeline system").

Without question, the Buildings—which house compressor units, as well as an administrative office supporting those units—are facilities operated and maintained by Plaintiff pursuant to its certificates of public convenience and necessity. The Buildings were constructed at Plaintiff's expense, and it is evident that the parties intended to allow for the construction—and subsequent removal—of certain structures which Plaintiff's

16

"operations from time to time may require." 2009 Lease at 1. The Buildings are necessary to operate the Cashion Compressor Station, as detailed in the certificates of public convenience and necessity, and the lease expressly contemplates their construction and subsequent removal.

Accordingly, because the 2009 Lease vested in Plaintiff the right to construct, and later remove, certain structures necessary to operate pipeline and compressor facilities, consistent with Okla. Stat. tit. 27, § 14(B), Landowner Defendants are not entitled to the fair market value attributable to the Buildings.[10] *See State ex rel. Dept. of Transp. v. Lamar Advertising of Okla., Inc.*, 2014 OK 47, 335 P.3d 771 (citing Okla. Stat. tit. 27, § 14(B) and acknowledging that a tenant, which apparently retained a removal right under a lease, was entitled to the compensation for the fair market value of a structure it constructed on condemned property).

---

[10] Nor is the Court persuaded by Landowner Defendants' argument that the following provision prevents Plaintiff's removal of the Buildings:

> [Landowner Defendants] acknowledge[] that the facilities to be operated and maintained are a part of [Plaintiff's] interstate natural gas pipeline system installed, operated and maintained pursuant to certificates of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC") and are subject to the primary jurisdiction of the FERC under the Natural Gas Act; and as a result, the facilities may not be lawfully removed by [Plaintiff] at the end of the primary lease term.

2009 Lease at 2. It is apparent that this provision was included pursuant to 15 U.S.C. § 717f(b), which states that "[n]o natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of [FERC], or any service rendered by means of such facilities, without the permission and approval of [FERC]." In other words, Plaintiff is not categorically restricted from removing certain facilities. Rather, it must simply obtain FERC's approval prior to doing so.

*Conclusion*

For the reasons set forth herein, the Court finds that (1) the date of taking is April 21, 2020, and (2) Landowner Defendants are not entitled to compensation for the value of the Buildings on the Property.

**IT IS SO ORDERED** this 19th day of May, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge